## NEIL v. UTAH WHOLESALE GROCERY CO.

No. 3781.   Decided October 10, 1922.   Rehearing denied November 3, 1922.   (210 Pac. 201.)

1. CONTRACTS—WHETHER CONTRACT IN CONTRAVENTION OF STATUTE IS VOID DEPENDS UPON INTENT OF LEGISLATURE.   Whether a contract made in contravention of a statute is void depends upon the intent of the Legislature, to be determined not only from the terms and provisions of the statute itself, but from the purpose and object sought to be accomplished by its enactment.

2. STATUTES—HISTORY AND CONDITION OF COUNTRY TO BE CONSIDERED IN DETERMINING LEGISLATIVE INTENT.   In determining the intent of the Legislature and the purpose sought to be accomplished by an enactment, it is the court's privilege and duty to consider the history of the times and the condition of the country at the time of the enactment as well as the language used.

3. SALES—SALE TO ONE WITHOUT STATUTORY LICENSE HELD VOID.   A contract to sell sugar to a wholesale dealer who had no license from the Food Administrator authorizing him to engage in the business of selling sugar as a wholesale merchant during the period covered by the contract as required by Act Cong. Aug. 10, 1917 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115⅛a, et seq.), and the President's proclamation issued under the authority delegated by the act, is void and unenforceable; the statute violated not being merely a revenue measure.

4. CONTRACTS—NO RECOVERY ALLOWED FOR BREACH OF VOID CONTRACT.   No recovery can be had for breach of an illegal contract.

Appeal from District Court, Second District, Weber County; *J. N. Kimball*, Judge.

Action by J. W. Neil against the Utah Wholesale Grocery Company.   From judgment for plaintiff, defendant appeals.

REVERSED.

*M. E. Wilson* and *Jacob Evans,* both of Salt Lake City, for appellant.

*Jas. Ingebretsen* and *Fisher Harris,* both of Salt Lake City, and *Chez & Douglas,* of Ogden, for respondent.

GIDEON, J.

Respondent, plaintiff below, seeks damages for the failure of appellant to deliver a certain number of bags of sugar claimed under a written contract. Respondent had judgment, from which the appellant, defendant below, appeals.

The contract is dated March 18, 1920. Its provisions are that appellant would deliver to respondent on the terms mentioned any number of bags of sugar from 1 to 5,000 contingent upon the ability of the appellant to deliver the same on or before April 1st of that year. The sugar was to be delivered f. o. b. cars in the state of California.

The disputed questions of fact were submitted to a jury.

If the court was right in denying the motion for nonsuit and in refusing to direct a verdict for the appellant at the close of the testimony, there is nothing in the record, in our judgment, prejudicial, and the judgment should be affirmed.

The court, among other things, instructed the jury that the respondent was a wholesale dealer in sugar as defined by congressional enactment of August 10, 1917 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115⅛a et seq.), and the proclamation of the President made under the authority delegated by that act. That instruction was justified under the undisputed facts in the record.

The serious question is the contention of appellant that the contract is void and unenforceable. It conclusively appears that the respondent had failed to obtain a license authorizing him to engage in the business of selling sugar as a wholesale merchant during the period covered by the contract. The district court was of the opinion that the prohibition contained in the congressional act and the President's proclamation was directed against the individual, and not against

the business of dealing in sugar. Whether the authorities supported that ruling of the court will be conclusive of the rights of the parties to this appeal.

The general purpose of the congressional act interposed as a defense is stated in the act as follows:

"For the purpose of more effectually providing for the national security and defense in carrying on the war with Germany by gathering authoritative information concerning the food supply, * * * by regulating the distribution thereof, * * * the powers, authorities, duties, obligations, and prohibitions hereinafter set forth are conferred and prescribed." (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115⅛a.)

Section 5 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115⅛g), under the title "Conservation of Supply and Control of Distribution of Necessaries," provides that the President, whenever it is "essential to license the importation * * * or distribution of any necessaries, in order to carry into effect any of the purposes of this act, and shall publicly so announce," and that "no person shall, after a date fixed in the announcement, engage in or carry on any" business specified therein "unless he shall secure and hold a license issued pursuant to this section." It is also provided in that section that any person convicted of distributing such necessaries as are set forth in the announcement without a license shall, upon conviction, be punished by a fine not exceeding $5,000, or by imprisonment of not more than two years, or both. It is further provided that the limitations or restrictions shall not be applicable to retailers. A retailer is defined as any one engaged in distributing the articles mentioned in the proclamation whose annual sales do not exceed the sum of $100,000. The act does not in express terms state that a contract made in violation of its provisions shall be void. The President, in August, 1917, issued his announcement by proclamation, and, among other things, it was therein provided that any person distributing any sugar at wholesale after November 1, 1917, should obtain a license from the United States Food Administrator upon forms prescribed for that purpose.

At the close of the plaintiff's testimony the defendant moved for a nonsuit and based its motion upon the ground that the contract was illegal, and not enforceable. At the close of the case appellant asked for a directed verdict based upon the same grounds. Both motions were denied by the trial court. These rulings are assigned as error.

Before considering the merits of the assignments it is advisable to set forth certain general principles stated and recognized by the authorities as controlling the question here presented.

The Supreme Court of California, in *Wood* v. *Krepps,* 168 Cal. at page 386, 143 Pac. at page 692 (L. R. A. 1915B, 1120), states the general rule applicable in the following language:

"The general doctrine now well settled by the authorities is that, when the object of the statute or ordinance in requiring a license for the privilege of carrying on a certain business is to prevent improper persons from engaging in that particular business, or is for the purpose of regulating it for the protection of the public or in the interest of public morals, health, or police, the imposition of the penalty amounts to a prohibition against doing the business without a license, and a contract made by an unlicensed person in violation of the statute or ordinance is void. * * * On the other hand, it is equally well settled, though it must be admitted that there are some few authorities to the contrary, that when the object of the statute or ordinance in imposing a license to conduct a harmless and legitimate business is solely for the purpose of yielding a public revenue, and not for the purpose of protection, contracts made in the course of such business are valid, notwithstanding a penalty is imposed for a failure to obtain a license to conduct it."

In *Pangborn* v. *Westlake,* 36 Iowa at page 548, the court, in considering whether a contract in violation of a statute is void and unenforceable, says:

"There is no doubt that the well-settled general rule is that, when a statute prohibits or attaches a penalty to the doing of an act, the act is void and will not be enforced, nor will the law assist one to recover money or property which he has expended in the unlawful execution of it, or, in other words, a penalty implies a prohibition, though there are no prohibitory words in the statute, and the prohibition makes the act illegal and void. [Citing cases.] But, notwithstanding this general rule, it must be apparent to every legal mind that, when a statute annexes a penalty for the

doing of an act, it does not always imply such a prohibition, as will render the act void. Suppose, for instance, the act itself expressly provided that the penalty annexed should not have the effect of rendering the act void. Surely in such case the courts would not give such force to the legal implication, under the general rule above quoted as to override the express negation of it in the statute itself. Then, upon this conclusion, we are prepared for the next step, which is equally plain, that if it is manifest from the language of the statute, or from its subject-matter and the plain intent of it, that the act was not to be made void, but only to punish the person doing it with the penalty prescribed, it is equally clear that the courts would readily construe the statute in accordance with its language and its plain intent."

The same principle is announced by the Supreme Court of the United States in *Harris* v. *Runnels,* 12 How. 79, 13 L. Ed. 901. The second and third headnotes to that case are as follows:

"Where a statute prohibits an act or annexes a penalty to its commission, it is true that the act is made unlawful, but it does not follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it.

"Where a statute is silent, and contains nothing from which the contrary can properly be inferred, a contract in contravention of it is void. But the whole statute must be examined in order to decide whether or not it does contain anything 'from which the contrary can be properly inferred.' "

See, also, *National Industrial Fire Ins. Co.* v. *Great Southern Fire Ins. Co.,* 177 Ky. 56, 197 S. W. 530; note, 12 L. R. A. (N. S.) 588; 17 R. C. L. Licenses, § 73, p. 560.

There is no conflict in the authorities as to this general rule of law. There apparently is some diversity of results in the application of the rule to the particular facts of different cases, but the rule has the support of the great weight of authority, if not the universal authority. It therefore becomes necessary, in the application of the provisions of the act to the facts found in the record before us and in determining the intent of the legislature, to consider not only the terms and provisions of the act, but the purpose and object sought to be accomplished by its enactment. In doing so it is the privilege and duty of the court to consider the history of the times and condition of the country at the time of the enactment as well as the language used.

The preamble of the act as quoted states that it is for the purpose of effectually providing for the national security and defense in carrying on the war with a foreign country. The general government at that time had taken under its control the great transportation systems of the country, and its entire resources were being mobilized for the prosecution of the war in which the country was engaged. The government was enlisting into its military service in one form of activity or another the entire young manhood of the land. Patriotic citizens from every state were neglecting their personal affairs and without reserve were devoting their energies and time to the successful prosecution of the war. It was necessary that the men engaged in the military service and other service of the government should be supplied with the necessaries of life. Sugar, as well as other food products mentioned in the announcement of the President, were admittedly necessaries, and the government was therefore vitally interested in knowing who was dealing in the food necessary for supplying its army then in active military service in a foreign country and the young men of the country then in military training. Is it reasonable to suppose, in view of these facts, that the Congress of the United States, in attempting to give the President power to designate who should engage in certain business and to prescribe rules and regulations for those so engaged, that contracts made in violation of such act should be enforceable and the parties so engaged subject only to a fine and imprisonment? Every reason for, and every purpose sought by, the enactment would indicate that it was the intent of Congress that any one making contracts in violation of the terms of that act should be without a remedy. It would be strange indeed if the Congress of the United States by the legislation in question, enacted as it was during the time of a great war, and having for its purpose the national security and defense, should be held to only intend that persons making contracts in violation of that legislation should have access to the civil courts for the enforcement of the penalties of such contracts. It should be remembered that the act was in no sense a rev-

enue measure such as the act of Congress considered by the Massachusetts Supreme Court in *Larned* v. *Andrews,* 106 Mass. 436, 8 Am. Rep. 346, and other cases cited by respondent.

The contract in question here, in our judgment, was an illegal contract, and not enforceable. The right of recovery necessarily must bring into consideration this illegal contract. Courts will not enforce such contracts. In *Pullman's Car Co.* v. *Transportation Co.,* 171 U. S. at page 151, 18 Sup. Ct. at page 813 (43 L. Ed. 108) the court says:

"They [the courts] are substantially unanimous in expressing the view that in no way and through no channels, directly or indirectly, will the courts allow an action to be maintained for the recovery of property delivered under an illegal contract where, in order to maintain such recovery, it is necessary to have recourse to that contract. The right of recovery must rest upon a disaffirmance of the contract, and it is permitted only because of the desire of courts to do justice as far as possible to the party who has made payment or delivered property under a void agreement, and which in justice he ought to recover. But courts will not in such endeavor permit any recovery which will weaken the rule founded upon. the principles of public policy already noticed."

In this case respondent has parted with no property. If recovery be had it must be upon the breach of an illegal contract. Public policy, as well as the settled principles of law, deny any relief under such state of facts. Notwithstanding the views of the learned judge who tried this case in the lower court, we cannot escape the conclusion that the court erred in denying appellant's motion for nonsuit and also erred in its refusal to direct a verdict for appellant.

There is no dispute as to the date or terms of the contract; neither is there any dispute of the fact that respondent was a wholesale dealer. Any recovery must therefore be founded upon an illegal contract. Therefore no good reason exists why the judgment of this court should not direct a dismissal of the action.

The judgment of the district court is reversed, and the cause is remanded to that court, with direction to dismiss the action.

Certiorari

Costs allowed appellant.

CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.