PYRAMID LIFE INSURANCE COMPANY *v.* PATTEN.

4-4804

Opinion delivered November 15, 1937.

*H. B. Stubblefield* and *Verne McMillen,* for appellants.

*E. F. McFaddin,* for appellees.

BUTLER, J. This appeal comes from a judgment of the Hempstead county circuit court in the sum of $1,000 in favor of the appellees, beneficiaries in a policy of insurance for that amount issued to Albert B. Patten, Jr., who died March 11, 1936. The appellant, in its answer, pleaded the provision of the policy to the effect that premiums might be paid in semi-annual or quarterly installments in advance, but that the payment of any premium or installment thereof should not maintain the policy in force beyond the date when the next premium or installment became payable, and that a grace of thirty-one days is granted from the payment of every premium or installment thereof after the first premium, during which the policy is in force; and, upon the further provision that upon a default in the payment of any premium the policy shall be null and void. The appellant alleged as a defense that the insured did not pay the annual pre-

mium at the time the policy was issued, but elected to pay it in quarterly installments; that he paid the first quarterly premium, but failed and refused to pay any premium thereafter, and that said policy lapsed for nonpayment of premiums thirty-one days after the 13th day of July, 1935.

The case was submitted upon the policy, certain stipulations, and the evidence of A. B. Patten, one of the beneficiaries, Miss Dove Knott and Jack Clark, and certain letters and documents. At the close of the evidence both sides asked for a directed verdict. The trial court directed the jury to return a verdict for the plaintiff for the face of the policy and to assess a twelve per cent. penalty, $150 attorney's fee and costs. As both litigants asked for an instructed verdict, the action of the lower court in directing a verdict for the plaintiff will be sustained if there appears to be any substantial evidence to support it.

The evidence, viewed in the light most favorable to the appellee, with the reasonable inferences to be drawn therefrom, presents the following state of case: Jack Clark was the general agent of the appellant company for several counties in southwestern Arkansas, including Hempstead, wherein this transaction occurred. Miss Dove Knott was a special or sub-agent employed by Clark to solicit insurance and take applications for policies. On April 5, 1935, the said general and special agents solicited and took the application of Albert B. Patten, Jr., son of appellees, for an insurance policy. In this application the method for the payment of the premiums in quarterly installments of $5.85 each was selected. It was signed by Albert B. Patten, Jr., and attested by the general agent, Clark, and the sub-agent, Miss Knott. Eighty-five per cent. of the premium for the first year was due by the company to the agents as their commission, seventy per cent. to the soliciting agent and fifteen per cent. to the general agent. At the time the application was taken it was agreed that the first quarterly premium payment, or so much thereof as was necessary, would be paid to the insurance company less agents commission for the net sum due it for the first year, and that the insured might

discharge the remainder of the premium in services rendered by assisting the agents in procuring other policies.

The policy applied for was issued under date of April 18, 1935. It was delivered to the insured by Clark, the general agent, who received from the insured the sum of $5.85 and of this sum transmitted to the appellant company a sum sufficient to cover its net annual due on this policy. The result of this agreement and transaction was to pay to the appellant company the entire amount of the premium due it for a full year from April 18, 1935, which, the appellees contend, gave full force and effect to the policy at the time of the death of the insured on March 11, 1936.

The appellant first contends that the oral agreement violated the provisions of § 10 of act No. 493 of the Acts of 1921 and avoided the policy and relies on the case of *United Order of Good Samaritans* v. *Meekins,* 155 Ark. 407, 244 S. W. 439, to support this view. The act, in substance, provides that it shall be unlawful for any life insurance company to discriminate between individuals of the same class in the amount of payment of premiums, etc., or to make any contract except as plainly expressed in the policy of insurance, or for any company or agent thereof to pay, or offer to pay directly or indirectly as an inducement to insurance, any rebate of premiums on the policy of insurance or any other thing of value not specified in the policy contract. As a penalty for the violation of the statute, it is provided that the company or agent offending shall be deemed guilty of a misdemeanor and, upon conviction, be fined in a sum named, and that the Commissioner of Insurance shall cancel the right of the company, if the act of its officer or agent was authorized, to transact business in this state for a period of one year.

The statute, *supra,* does not appear to be aimed at those receiving life insurance policies, but rather against companies and their agents. It does not prohibit any person from receiving a rebate, and it does not declare any policy to be void where a rebate is given or accepted. It does prescribe the penalty for the violation of the law, and, under ordinary rules of construction, such penalty

is exclusive. To give to the statute the effect contended for by appellant would be to enable it to take advantage of its own wrong. As pointed out by the Supreme Court of Alabama in *Meridian Life Ins. Co.* v. *Dean,* 182 Ala. 127, 62 So. 92, "It (the insurance company) can collect the premiums on policies for years, less whatever rebate it sees fit to allow, being careful not to allow the same rebate to all, keep all the premiums paid, and escape all liability for loss by setting up that it had violated the law."

In Couch's Ency. of Insurance Law, § 586, it is stated: " * * * the great weight of authority is to the effect that the insurance company itself cannot be heard to say that the contract of insurance is void because of a violation of the anti-rebate statute, for the purpose of defeating the insured, and thus taking advantage of its own wrong."

Unless a statute prohibits the insured from receiving a rebate and denounces a penalty for its violation, it clearly appears that such statute is designed to regulate insurance companies and not to punish the public who deals with them. In the statute under consideration, no reference is made to the insured, no provision is made for avoiding the policy, and it is clearly not the legislative intent that violations of the rebate law do more than inflict the punishment named therein. The case of *United Order of Good Samaritans* v. *Meekins, supra,* dealt with an entirely different and unrelated act. (Crawford & Moses' Digest, § 6075.) This is a part of the law relating to fraternal benefit societies and prescribes the ages of persons who may be admitted for beneficial membership therein. The effect of this was to limit the power of the society and necessarily any exercise of power beyond that permitted would be void. This is what the court held in the case cited. In the instant case, no question of the power of the insurance company is involved, but only a regulation as to how that power shall be exercised, and a penalty for the unlawful exercise of power is expressed in the statute. It will be seen, therefore, that the Meekin case is not applicable to the question now before us.

It is next insisted that the oral agreement, if any, was not authorized, and that there is no evidence that Jack Clark helped to make any agreement with the insured or that he knew anything about such agreement prior to the time the policy was delivered. It must be conceded that a portion of the testimony of Clark, standing alone, supports this contention, but the testimony of Miss Knott is in conflict with that of Clark. The reasonable inference to be drawn from her testimony is that Clark was with her when the application was taken and the agreement made, and, from his own testimony when considered as a whole, it appears that if he were not present and taking part in the agreement as to how the premiums were to be discharged, he knew about it and assented thereto and informed the beneficiaries after the death of the insured that the policy was in force. A letter was identified by Clark as one received from the appellant company and read in evidence. This letter is so indefinite as to be almost unintelligible, but seems to indicate that the company was expecting to receive the "annual net" due on the policy and was charging the general agent, Clark, with the balance which it had not received.

To sustain the contention that the agreement was unauthorized and not binding on the appellant company, many cases from our court are cited. It would be unprofitable to review those cases in detail in distinguishing them from the case at bar. It is sufficient to say that they deal with the authority of soliciting agents and the appellant confuses the authority of Miss Knott with that of Jack Clark. The cases cited would apply if the agreement had been solely between Miss Knott, the soliciting agent, and the insured without the participation of the general agent, Clark, or his knowledge and assent thereto.

The appellant contends that the evidence is not sufficient to show any general authority in Clark except to appoint sub-agents. We do not so interpret the evidence. He was designated by the appellant company as its general agent, he was paid a commission as such in addition to that paid the soliciting agents, and that the specific power to employ sub-agents was given him does not im-

ply that his general powers were limited to those specific acts. The appellant introduced no testimony to the effect that Clark was not its general agent and we think a clear preponderance of the testimony establishes that he was. That being the case, with respect to the insured, he had the power to waive any condition inserted in the policy for the benefit of the company even to the extent of waiving premiums and admitting liability. *Pacific Mutual Life Ins. Co.* v. *Carter,* 92 Ark. 378, 123 S. W. 384, 124 S. W. 764; *Reserve Loan Life Ins. Co.* v. *Compton,* 190 Ark. 1039, 82 S. W. (2d) 537.

In connection with the cases cited in appellant's brief, its reply brief cites the case of *National Life Insurance Co.* v. *Ballentine,* 190 Ark. 108, 77 S. W. (2d) 799; but the court, in that case, as in the others, was dealing with the power of a soliciting agent to waive a cash premium. As heretofore pointed out, there is a marked difference between the powers of a general agent and those of a local agent with respect to waiver of the conditions of a policy. So, in the final contention that the oral agreement contradicts the written terms of the application and policy, the powers of the general agent must be considered. Here, there was no attempt to alter the terms of the policy, but a waiver by one having that authority.

From the views expressed it follows that the evidence was of a substantial nature tending to establish the power of the agents to make the agreement and that it was, in fact, made. The judgment of the trial court will, therefore, be affirmed.