295 P.2d 339

Clark A. ROSS, Nicholas G. Shaheen, Hugh V. Bird, Glen W. Crosby, Ellis A. Shaheen, Otto L. Jorgensen and Larry W. Blake, Plaintiffs and Appellants,

v.

PRODUCERS MUTUAL INSURANCE COMPANY, Producers Finance Company of Utah, Wendel A. Davis, Richard G. Johnson, Ernest A. Richards, George R. Heeder, David A. Russell and Nina B. Davis, Defendants and Respondents.

No. 8394.

Supreme Court of Utah.

March 14, 1956.

---

1. Section 77–42–1, U.C.A.1953; State v. Woods, 62 Utah 397, 220 P. 215.

398

Delbert M. Draper, Salt Lake City, for appellants.

J. Grant Iverson, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs sued for return of all premiums they had paid Producers Mutual Insurance Company (hereinafter called Mutual) on policies because of illegal aspects of the policies. The trial court granted a motion to dismiss the complaint; hence this appeal.

The form of policy in question was called "Founders Participating Policy." It states that it is automatically convertible at the end of a five-year period into a whole life policy to be carried by a "Producers Life Insurance" Company, not shown to be then in existence. Sold in connection with this policy was a Trust Agreement in which the insured assigned dividends from the policy to trustees to purchase stock in Producers Finance Company (hereafter called Finance Company). This plan for intermingling stock and insurance was developed in Arizona, and it is legal in that state. However, in 1953, the Utah Department of Business Regulation, acting under Section 31–27–15, U.C.A.1953, ordered Mutual to refrain from selling shares of stock either in connection with or as an inducement for insurance. That section provides that:

> "No insurer * * * shall, as an inducement to the purchase of insurance, or in connection with any insurance transaction, provide in any policy for, or offer, or sell, buy, or offer or

ferred to. In view of our holding in

099

promise to buy or give, or promise, or allow, in any manner whatsoever:

"(1) any shares of stock or other securities issued or at any time to be issued or any interest therein or rights thereto * * *."

In the case of In re American Buyers Ins. Co.[1] we rejected the theory of the defendants that the statutory provision extended only to old line insurance companies and not to mutual life insurance companies such as defendant.

In seeking to recover the premiums paid in, plaintiffs make three contentions: (1) The policies are void ab initio because they violate Section 31–27–15, supra, as decided in the American Buyers case;[2] (2) that the policies are voidable because they lack mutuality, and (3) that the policies were obtained by fraud. The trial judge ruled against plaintiffs on all three grounds, and granted defendants' motion to dismiss for failure to state a cause of action. It is from this action that plaintiffs prosecute their appeal here.

1. *Does the fact that Mutual combined insurance and security transactions in violation of our insurance code render the policies void ab initio?*

Plaintiffs complain of numerous violations of our statutes regulating the insurance business. The only one we deem of sufficient importance to warrant considera-

tion here is Section 31–27–15 above referred to. In view of our holding in American Buyers case, supra, defendant conceded in this action that the sale of the policy and trust agreement together was illegal and tendered into court the amount to be set up as representing payments to the finance company under each agreement. But its position is that the contract of insurance was not void but could be regarded as separate and valid.

It is true, as plaintiffs contend, that there is a rule which is generally recognized to the effect that insurance contracts in violation of statute are void.[3] But the cases that have found exceptions to the rule have lead Professor Williston to conclude that the so-called general rule as it is usually quoted is not strictly accurate:[4]

"It is more correct to say that 'A party to an illegal bargain generally can neither recover damages for the breach thereof, nor, by rescinding the bargain recover the performance that he has rendered thereunder or its value.'"

The origin of this rule is rooted in public policy considerations: that if parties to illegal agreements are denied the aid of a court in enforcing them or recovering damages for their breach, the number of such illegal operations will decrease. This judicial policy was not developed for the

1. In re American Buyers Ins. Co., 2 Utah 2d 205, 271 P.2d 844.

2. Note 1, supra.

3. See Annotation, 12 L.R.A.,N.S., 576.

4. 5 Williston, Contracts, Sec. 1630 (Rev. Ed.)

sake of either of the immediate parties to an unlawful transaction, although often—and unavoidably—one of them may reap a windfall. As Williston points out:[5]

"To deny a wrongdoer damages or the return of value of his performance, though an equally guilty defendant thereby escapes punishment and may be enriched, tends to diminish the number of illegal bargains. To go further and assert that all unlawful agreements are *ipso facto* no contracts and void is opposed to many decisions and unfortunate in its consequences, for it may protect a guilty defendant from paying damages to an innocent plaintiff."

Williston concludes that no agreement should be held void in toto unless no other result is possible from the words of the statute. Otherwise, blind and unreasoning forfeitures would result in depriving one party of his entire investment, or effort in performance, because of some technical violation of statute, and reward the other, perhaps equally guilty party, with an undeserved and unearned benefit. This probably explains the actual attitude of the courts which have considered various aspects of contracts which violate some statutory provision.[6] Originally a distinction was often drawn between statutes that were malum in se (contracts violating such statutes were void) and those which were malum prohibitum (such contracts were not void); but it is now recognized that whether a malum prohibitum contract is void is to be determined from an examination of the statute as a whole.[7] Among the factors to be weighed are whether the enactment was passed primarily as a revenue measure or whether it was a policing measure,[8] and whether the statute contains an express provision making the contract

5. Ibid.

6. For qualifications of the "general rule" see Harris v. Runnels, 12 How. 79, 13 L.Ed. 901; In re Peterson's Estate, 230 Minn. 478, 42 N.W.2d 59, 62, 18 A.L.R. 2d 910.

7. See, e. g., Holland v. Sheehan, 108 Minn. 362, 122 N.W. 1, 23 L.R.A.,N.S., 510; Neil v. Utah Wholesale Grocery Co., 61 Utah 22, 210 P. 201; 3 Sutherland, Stat. Constr. (3 ed.) Sec. 5608; 2 Rest. Contracts, Sec. 580, Comment a.

8. Olsen v. Reese, 114 Utah 411, 200 P.2d 733, 736 (contractor who fails to obtain license may not recover on building contract). The situation arises most frequently where one party seeks to avoid his obligation because the other party has failed to secure an occupational or business license. Generally the contract will be upheld if the statutory purpose was for revenue only. E. g., Banks v. McCosker, 82 Md. 518, 34 A. 539 (failure of hawker or peddler to obtain a license). If licensing provisions are directed toward establishing minimum professional requirements or providing full disclosure of information, the failure to obtain a license will render a contract void. E. g., Lyon v. Leet, 199 Iowa 1034, 202 N.W. 881 (chiropractor who held self out as physician could not recover for services where he had not obtained license) and Johnson v. Allen, 108 Utah 148, 158 P. 2d 134, 159 A.L.R. 256 (violation of Blue Sky legislation); extensively annotated in 42 A.L.R. 1226, 30 A.L.R. 834, 118 A.L.R. 646.

void.[9] But the primary consideration, of course, is what does the statute construed as a whole indicate?

■ Turning to our statute, we think it is apparent that our Legislature intended to make contracts of insurance valid wherever possible. For example Section 31–19–35, U.C.A.1953, reads:

"Any insurance policy, * * * otherwise valid, which contains any condition or provision not in compliance with the requirements of this code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code."

And, although Section 31–19–19, U.C.A. 1953, specifically declares "void" any conditions which require a policy to be construed according to the laws of some other state, or which deprive the courts of this State of jurisdiction, or which limit actions against insurers, the statute then goes on to state specifically that such voiding will not affect the validity of other provisions of the contract. We note also that, irrespective of statute, the general judicial attitude toward insurance policies is to sustain them on grounds of public policy wherever possible.[10]

■ Somewhat similar problems have arisen in the treatment of the anti-rebate provisions in insurance codes both in this State and in other jurisdictions. Violation of the anti-rebating section of the statute subjects the insurer to prosecution for a misdemeanor and to revocation of its license to do business within the State, the same penalties imposed for a violation of the section here under consideration.[11] But irrespective of these sanctions, it has generally been held that such illegality may not be pleaded either to avoid liability on the contract, or to recover the amount paid or promised as a rebate. And this is so whether the plea is attempted at the instance of the insured, the insurer or the beneficiary.[12] Since the Legislature has deemed it fit to treat interdictions on rebates and on stocks in the same manner, logic would impel us also to view the two violations in the same manner and hold that neither will render the insurance policy void.

9. E. g., our usury statute, Section 15–1–6; U.C.A.1953, interpreted in Rossberg v. Holesapple, Utah, 260 P.2d 563.

10. 44 C.J.S., Insurance, § 239, p. 998.

11. Sections 31–1–6 (misdemeanor), 31–27–16 (revocation of license), U.C.A. 1953.

12. Action by insured, Landau v. New York Life Ins. Co., 199 Mo.App. 544, 203 S.W. 1003; action by beneficiary, Pyramid Life Ins. Co. v. Patten, 194 Ark. 987, 110 S.W. 2d 526; action by insurance broker (whose rights depended on rights of insurer), Ashton Jenkins Ins. Co. v. Layton Sugar Co., 85 Utah 333, 39 P.2d 701. See 44 C.J.S., Insurance, § 342, p. 1310.

■ Policy considerations require this result also. The corollary to holding this policy to be void at the instance of the policy holder would be that in the event of loss the insurance company would not be bound to respond. Yet, plaintiffs offered evidence showing that Mutual paid death claims on this type of policy, and that these policy holders received protection during the period that they maintained their policies in force. The same conclusion would undoubtedly follow on principles of estoppel; having accepted payments made as premiums, the company would not be permitted to set up the defense that no risk attached. Under such conditions it would be unfair to allow plaintiffs to recover their full premium payments. Of even more concern are the conceivable effects that such a decision would have on insurers not even involved in the present suit. Suppose, for example, that other insurance companies are in fact operating in some technical violation of statute, the difficulties arising from the dictum that such policies are void (except for principles of estoppel) are obvious. We hold, therefore, that the violation of Section 31–27–15, U.C.A.1953, does not void the entire contract of insurance.

2. *Was the policy voidable for lack of mutuality?*

Each of the plaintiffs purchased a term insurance policy in Mutual. The policy was denominated on its face as automatically convertible. In addition to the initial premium, each plaintiff paid a $5 life membership fee and agreed to exchange the policy in Mutual for a non-assessable legal reserve life policy in a different company, Producers Life Insurance Company, after the fifth anniversary of the policy. Plaintiffs argue that the contract was illusory because Mutual was not bound to keep the policy itself; that all Mutual said was that some other company would take over responsibility; nor did Producers Life promise anything, and nothing is made to appear either that Producers Life ever accepted such policies or that it is even an existing company. Plaintiffs also urge that there was no consideration to support the life membership payment, for under our statute, Section 31–9–11, U.C.A.1953, every purchaser of a mutual policy is automatically a member of the insurance company.

■■ We agree, of course, that mutuality of obligation is an essential element of the contract. A plea that a contract is defective in this regard is really a statement that the contract lacks consideration. Consequently the issue posed is whether, considering the contract as a whole, the plaintiffs here were left without valid consideration for their promise.[13] Whenever possible a contract should be so construed that there are mutually binding promises on each party.[14]

13. 1 Williston, Contracts 504, Sec. 141 (Rev.Ed.) ; 17 C.J.S., Contracts, § 100, p. 443 ff.

14. 12 Am.Jur. 609, Contracts, Sec. 1194; 17 C.J.S., Contracts, § 100, p. 448.

■■ Each of the plaintiffs lapsed his policy before the convertibility feature of the policy came into operation. Moreover, it appears that Mutual has subsequently agreed to continue the policies under the terms set out in the Application for Insurance and has, in fact, furnished such coverage to those insureds who have requested it —all with the approval of the State Insurance Commissioner. Thus, even if it should be conceded that the policies initially lacked mutuality, plaintiffs' assertion appears unmeritorious on two grounds: (1) The contracts have been executed, and (2) the lack of mutuality was subsequently cured.[15]

*3. Were plaintiffs' policies voidable for fraud?*

■ The basis of the claim of fraud was that the policies were invalid because of illegality and lack of mutuality so that the plaintiffs did not get what they had bargained and paid for. What we have said above renders it unnecessary to further discuss that issue.

The foregoing disposes of the main questions presented by this appeal. However, the question remains whether the defendant tendered the correct amount as refund for the illegal aspect of the transaction. Although agreeing that the plaintiffs should recover the sum allocable to the illegal portions of the agreement, defendants seek to retain for themselves the entire premiums received except for the net sum that Mutual was required to pay over to Finance under the Trust Agreement. This is no more fair nor equitable than it would be to permit the defendant company to retain only the bare costs of term insurance for the coverage given plaintiffs and to require the return of the rest of the amount collected to plaintiffs.

■ It is conceded by all concerned that of the premiums collected, particularly the initial premiums, a high percentage goes to what are called acquisition costs, including payment of salesmen's commissions, establishment and maintenance of office procedure, salaries of personnel and the fixed expenses in carrying on the business. These costs were as much chargeable pro rata to the advantage of Finance Company and that aspect of the business as they were to the sale and handling of the insurance feature of the policy. Yet the defendant has charged the entire cost to the insurance, or legal aspect of the transaction. It is willing to return only the net cost to it of the Finance Company or illegal part of the arrangement. In fairness to Mutual, it should undoubtedly be allowed to charge against these premiums more than the basic cost of term insurance for the coverage given. But it should also be required to return to the plaintiffs whatever portion of the premiums received as are properly allocable to the acquisition and other costs of the trust agreement part of the transaction. We are aware that this may present some difficulties, but the plaintiffs should not be denied recovery simply because the amount they are entitled to is

15. 12 Am.Jur. 610, Contracts, Sec. 114.

404

difficult to determine. This is particularly so when defendant company was at fault in initiating and selling the illegal trust agreement.

It, therefore, appears necessary to remand this case to the district court for further proceedings and determination of the correct amount to be refunded to plaintiffs.

Such is the order. The parties to bear their own costs.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

HENRIOD, J., does not participate herein.