**358 P.2d 95**

**J. Lowell PLATT, dba Crystal Pools, Inc., Plaintiff and Respondent,**

**v.**

**C. L. LOCKE, Defendant and Appellant.**

**No. 9238.**

Supreme Court of Utah.

Jan. 3, 1961.

Rich, Elton & Mangum, Salt Lake City, for appellant.

George H. Searle, Salt Lake City, for respondent.

WADE, Chief Justice.

Defendant C. L. Locke appeals from a judgment awarding plaintiff J. Lowell Platt, doing business as Crystal Pools, Inc., the amount which the court found owing to him under a written contract dated April 1, 1958, for the construction of a swimming pool. Defendant Locke claims that Platt was not entitled to recover (1) because he

had no specialty license to construct swimming pools, (2) because Platt was doing business under an assumed name but had not filed in the Salt Lake County Clerk's office, where his principal place of business was located, an affidavit setting forth that he was conducting such business under an assumed name as required by Sec. 42–2–1, U.C.A.1953, and (3) because Platt made the contract as Crystal Pools, Inc., when there was in fact no such corporation. After a short review of the facts we will consider these points in the order stated.

(1) Prior to the changes in contractor's license statutes of 1957 our statutes authorized the issuance of only one class or kind of contractor's license.[1] Such license at that time had about the same coverage as is presently covered by three classes with additional subdivisions.[2] The general building contractor's license is one of those classifications. It covered building construction requiring "the use of more than two unrelated building trades or crafts or to do or superintend the whole or any part thereof."[3] Another of such classes is the specialty contractor's license requiring special skill or the use of specialized building trades or crafts.[4] The administrator of the department is authorized to classify specialty contractors into a number of different classifications and require a separate license for each of such classifications.[5] After the department was organized and the administrator appointed, one of such classifications requiring a separate license was for a contractor constructing swimming pools.

Prior to the 1957 enactment plaintiff Platt was a duly licensed contractor and such license was regularly renewed for 1958. On April 1, 1958, the date of this contract, the department administrator had classified contractors building swimming pools as requiring a specialty contractor's license and notified plaintiff of such requirement on May 12, 1958, and plaintiff obtained such a license the next day, May 13. Plaintiff continued to construct the swimming pool for defendant until May 30, 1958, when defendant Locke refused to pay the amount past due and owing to plaintiff under the terms of such contract. An argu-

1. See sections 58–6–1, 3, 4 and 5 U.C.A. 1953. Also Laws of Utah 1957 Chapter 115 and particularly section 20 thereof repealing sections 58–6–1 to 10, both inclusive, of U.C.A.1953, also same provisions 1959 Pocket Supplement to Volume 6, U.C.A.1953.

2. See section 58–6–3, U.C.A.1953 for definitions of prior coverage and Laws of Utah 1957, Chapter 115, Section 9, and same section 1959 Pocket Supplement to section 58–23–9, U.C.A.1953.

3. See Laws of Utah 1957, Chapter 115, Section 9(b) and same section 1959 Pocket Supplement to Volume 6, U.C.A.1953 Section 58–23–9(b).

4. See Laws of Utah 1957, Chapter 115, Section 9(c) and same section 1959 Pocket Supplement to Volume 6, U.C.A. 1953, Section 58–23–9(c).

5. See Note 4.

ment ensued and defendant refused to allow plaintiff to continue the construction of the swimming pool unless he would agree to also install the gas and water lines to such swimming pool. Plaintiff refused to do this work in addition to what the contract required whereupon defendant ordered him off the place.

■ (1) Undoubtedly these contractor's license statutes were intended to protect the general public. So ordinarily the failure of a contractor to obtain the required license before engaging in such business would prevent a recovery.[6] But this is an unusual situation. Prior to 1957 no specialty license was authorized or obtainable. Only one class of contractor's license was authorized under the former statutes regardless of the type of work such contractor was doing. The trial court held that no specialty contractor's license was required under the 1957 statute although such holding was contrary to the views of the head of the contractor's license department.

The 1957 statutory provisions requiring a separate license for specialty contractors as designated by the administrator of that department are not self-executed. These provisions did not specify what specialty licenses were required. That was left to the administrator and his advisors to determine and put into effect after the department was reorganized and this problem considered.[7] A holding that a contractor such as plaintiff who entered into a specialty contract with no knowledge or notice that a license therefor was required under these circumstances might work grave hardship to such contractor. For without any notice or knowledge or lack of diligence in finding out such a requirement such a contractor might be barred from recovering for honest and efficient services rendered because he did not know that a specialty license was required. The state by giving plaintiff notice of such requirement seems to recognize the possibility of such grave injustice, and Laws of Utah 1957, Chapter 115, Sec. 13, same as 1959 Pocket Supplement to Volume 6, U.C.A. 1953, Sec. 58–23–13, although somewhat indefinite, seem to recognize the right of a licensed contractor to continue in the same contracting business as he had engaged in prior to the 1957 change by merely renewing his contractor's license which previously existed. That section provides:

"(1) All licenses issued under the provisions of this act, unless sooner suspended or revoked as herein provided, shall elapse and expire on December 31 of each year.

---

6. See Chase v. Morgan, 9 Utah 2d 125, 339 P.2d 1019; Olsen v. Reese, 114 Utah 411, 200 P.2d 733.

7. See Laws of Utah 1957, Chapter 115, Section 5(10) and same section 1959 Pocket Supplement to Volume 6 of U.C.A. 1953, Section 58–23–5(10).

"(2) The administrator shall, at least thirty days prior to such expiration date, notify each licensed contractor of such expiration * * *

* * * * * *

"(4) All licensed contractors in the state as of the effective date of this act shall be entitled to continue the business of contracting upon complying with the provisions of this act relating to the filing of renewal applications, fees, as herein provided."

 Although this last provision is somewhat indefinite the effect thereof is to allow a contractor to continue to do the same contracting business which he was entitled to do under his license obtained pursuant to the statute prior to the 1957 changes for at least a reasonable length of time after notice that such changes had been effected. Under this holding plaintiff's recovery was not barred by his failure to obtain a specialty license to contract

swimming pools before entering into this contract on April 1, 1958, and since he is not guilty of failure to act diligently in obtaining a specialty license after receiving notice that such was the requirement, plaintiff is entitled to recover in accordance with the trial court's judgment.

 (2) Platt's failure to file in the Salt Lake County Clerk's Office an affidavit that he was conducting his business under the assumed name of Crystal Pools, Inc.,[8] does not bar his recovery. Apparently this court has never directly passed on this question. However, the law on this subject is correctly stated in Oakason v. Lisbon Valley Uranium Company,[9] syllabus 1. That "[N]oncompliance with Utah assumed name statute would not preclude recovery by plaintiff otherwise entitled to recovery for services rendered under a contract, since such statute is primarily for the convenience of the public rather than protection of the public." It is generally recog-

8. Section 42–2–1, U.C.A.1953, provides: "Affidavit of assumed and of true name—Filing.—No person or persons shall carry on or conduct or transact business in this state under an assumed name, or under any designation, name or style, corporate, partnership or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the county clerk of the county in which the principal place of business is, or is to be, located, an affidavit setting forth the name under which such business is, or is to be, conducted or transacted, and the true full name or names of the person or persons owning, conducting or transacting the same, the location of the principal place of business, with the postoffice address or addresses of such person or persons. Such affidavit shall be executed by the person or persons so conducting or intending to conduct such business." Section 42–2–4, U.C.A.1953, provides: "Penalty.—Any person who fails to comply with the provisions of this chapter is guilty of a misdemeanor."

9. Oakason v. Lisbon Valley Uranium Company, D.C., 154 F.Supp. 692.

nized that the legislature in passing such statute did not intend, in addition to subjecting the offender to an express penalty, also to impose the additional penalty of refusing him any relief on the contract or transactions entered into without compliance with the statute.[10] Here the legislature did make it a criminal offense to fail to file the affidavits required but did not impose any regulation, supervision or license in order to conduct said business. So we conclude that since the purpose of this statute was to make available to the public the names and addresses of persons operating a business under an assumed name and not to insure, regulate for license such business or investigate the competence or integrity of its operators the failure to file the required affidavit does not bar a recovery.

 (3) Nor does the fact that Platt made the contract as Crystal Pools, *Inc.* (emphasis ours), when he was doing business under that name without incorporating his business bar his recovery. The law generally recognizes that persons may transact business under an assumed or fictitious name as long as fraud, infringement of trademark or unfair competition are not involved.[11] Here the trial court expressly found from ample evidence that appellant Locke entered into such contract knowing that he was dealing with Platt, who was doing business under an assumed name of Crystal Pools, Inc. The fact that the word "Inc.," is used in the assumed name suggests that the business was incorporated. But the court found that Locke knew that Platt was personally operating the business under that assumed name which shows that no fraud or other detriment was inflicted on the defendant, and therefore the contract entered into under that name was enforceable.

Judgment affirmed. Costs to respondent.

McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

---

10. 38 Am.Jur. 603–605, under "Name" section 15; see also 42 A.L.R.2d 517–572; 59 A.L.R. 455; 45 A.L.R. 198.

11. 38 Am.Jur. 601, under "Name" section 13.