**HEBER VALLEY TRUCK, INC.,**
**Plaintiff and Appellant,**

v.

**UTAH COAL AND ENERGY, INC.,**
**Defendant and Respondent.**

**No. 16485.**

Supreme Court of Utah.

April 30, 1980.

---

4. Id.

5. Id. See statement in *Van Kleeck Creamery, Inc. v. Western Frozen Products Co.*, supra, note 1.

Terry L. Christiansen of Adkins & Christiansen, Park City, for plaintiff and appellant.

Sandra N. Peuler, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

Plaintiff brought action for specific performance of a contract under which it had an exclusive franchise to carry all coal produced from defendant's coal mine to intrastate destinations, and also sought recovery of $1,271.20 for hauling coal during February, 1978, pursuant to said contract. After a trial on the merits, the District Court for Summit County, sitting without a jury, entered judgment for defendant, declaring the contract unenforceable as plaintiff had failed to comply with the provisions of Section 54–6–12, Utah Code Ann., 1953,[1] as amended. Plaintiff appeals.

The subject contract was entered into between Utah Coal and Energy and James H. Maddox, David Wurth and Theodore R. Zupan, the incorporators of Heber Valley Truck, Inc., who agreed therein to organize said corporation for the purpose of acting as carrier for all coal produced from defendant's "Black Hawk Mine," located east of Coalville, Utah. The contract was executed on August 16, 1976. The contract provides, *inter alia*, for a duration period of ten years, with two ten-year options for extension given to plaintiff; freight charges in a set amount per ton of coal, with periodic adjustments based on average charges of other named carriers; survival of the exclusive franchise provision even though changes of management or ownership occur in defendant company; and defendant's right to terminate, for cause only, upon written notice to plaintiff by defendant of any claimed default or deficiency, and a reasonable time to remedy the same.

The coal mine did not go into production until February, 1978, at which time plaintiff hauled the first shipment of coal, for which it submitted its bill for $1,271.20. Defendant had no funds at that time to pay the bill, and billed the purchaser of the coal, which refused to pay it. In June of 1978, defendant notified plaintiff that a second shipment was ready, but plaintiff refused to ship the coal until its February bill was paid. Defendant then used another trucker for the shipment.

Paragraph 10–C of the contract provides:

Parties understand and agree that the Carrier shall acquire all highway permits, licenses and shall comply with all laws State, Federal and Local and shall pay any highway use taxes.

1. All statutory references are to Utah Code Ann., 1953, as amended, unless otherwise specifically indicated.

Plaintiff licensed its trucks on a quarterly basis in order to avoid additional costs while the trucks lay idle. Plaintiff submitted into evidence copies of such licenses obtained for the purpose of the February shipment, which had expired by June, 1978. However, plaintiff's president explained that though the trucks were not licensed, when the second shipment was ready, it would take only 30 minutes to obtain sufficient licenses, and that he did not believe the plaintiff should spend more money until it was paid for the previous shipment. The copies of the truck licenses admitted in evidence indicate insurance coverage.

Plaintiff's president also testified that he understood that the plaintiff, as an intrastate coal carrier, was exempt from registration as a common carrier, and that no application had been made to the Utah Public Service Commission for a certificate of exemption.

Section 54–6–12 provides that motor vehicle carriers are exempt from the Motor Vehicle Transportation Act, *inter alia*, if the cargo of such carrier consists exclusively of coal which is being transported from mine to shipping point or market. All such exempt carriers, however, are required to register with the Utah Public Service Commission within thirty days after commencing operations, pursuant to said section, and are also required to carry pubic liability insurance covering personal injury and property damage at or above minimum levels, maintain vehicles and all parts thereof in a safe condition, and report every accident arising from or in connection with the operation of said vehicle. Section 54–6–12 also provides that any violation of the section constitutes an unlawful act and is punishable in the same manner as provided for in the act for nonexempt carriers.

The District Court entered its findings of fact that Section 54–6–12 is regulatory in nature and noncompliance therewith rendered the agreement unenforceable. On that basis the District Court denied plaintiff recovery of payment for its services and denied specific performance.

Plaintiff contends that the Court erred in refusing to enforce the contract solely on the basis of plaintiff's failure to register with the Public Service Commission as an exempt carrier. Plaintiff bases its contention on the ground that the contract is not unlawful by its terms, and mere noncompliance with this filing requirement did not render the contract illegal, and unenforceable. We agree.

■ Where a statute requires that a license be obtained prior to engaging in a business or profession, and the license is not merely for the purpose of raising revenue, but is a regulation measure used to protect the public from fraud or incompetence in that particular business or profession, the general rule is that an unlicensed person cannot enforce a contract to recover payment for his services in conducting such a business. This Court has applied this general rule,[2] but recognizes that if applied too broadly or inflexibly, injustice can occur, for it allows defendant to take the benefit of an unlicensed plaintiff's labor and refuse to pay for it.[3]

This Court has, in recent cases, declined to apply the general rule in those cases where the defendant is not within the class of persons whom the licensing statute is designed to protect. Thus, in *Fillmore Products v. Western States Paving*, Utah, 561 P.2d 687 (1977), this Court held that a licensed contractor could not invoke the rule to avoid its contractual obligation to an unlicensed subcontractor solely because of the failure of the subcontractor to obtain a license, as all of the work had to meet the requirements and specifications of the general contract, and the entire project was under the supervision of a licensed project engineer. And in *Lignell v. Berg*, Utah, 593 P.2d 800 (1979), we held that a contractor company which had inadvertently allowed its license to lapse was entitled to

2. *Olsen v. Reese*, 114 Utah 411, 200 P.2d 733 (1948); *Mosley v. Johnson*, 22 Utah 2d 348, 453 P.2d 149 (1969).

3. See Chief Justice Crockett's dissent in *Mosley v. Johnson*, supra, n. 2.

recover for its services, as it had never failed to satisfy the licensing authority of its technical competence and financial qualifications for a license, but had merely failed to pay the required fee.

In this case, plaintiff failed to comply with Section 54–6–12, a statute which is not designed to protect the public against fraud and incompetence of the carrier, but instead, is to assure the use of safe vehicles on the public highways and to assure the general public of the financial responsibility of public carriers in the event of personal or property damage by reason of the use of those vehicles on the highways. Hence, plaintiff cannot be denied the amount of $1,271.20 for the reason assigned by the District Court.

Plaintiff further urges this court to hold that it is entitled to specific performance of its contract, contending that it is entitled to equity, as its remedy at law is insufficient. In addition, both parties claim attorney's fees under the contract, alleging breach of contract on the part of its opponent. However, the District Court made no findings with regard to any matter other than the failure of plaintiff to register as an exempt carrier with the Public Service Commission, and the factual questions of (1) whether there was breach of contract, and, (2) if so, on the part of which party, (3) damages, if any, owing to defendant if the Court determines a breach by plaintiff (plaintiff conceded on oral argument before this Court that it could not present credible evidence of damages because they were incalculable —hence, plaintiff's urgence for specific performance); (4) which party is entitled to attorney's fees pursuant to the subject contract, as well as (5) whether specific performance lies, remain undetermined. We, therefore, reverse and remand this case to the District Court of Summit County for further proceedings consistent with this opinion. Costs to plaintiff.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.