**Anton ROECKL, individually, and d/b/a Fermell Company, Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Appellee.**

No. S–5622.

Supreme Court of Alaska.

Dec. 2, 1994.

---

William L. Choquette, Artus & Choquette, P.C., Anchorage, for appellant.

Robert C. Auth, Staff Atty., Anchorage, Ann S. DuRoss Asst. Gen. Counsel, Richard J. Osterman, Jr., Sr. Counsel, and E. Whitney Drake, Sp. Counsel, Washington, DC, for appellee.

### OPINION

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

BRYNER, Justice, Pro Tem.

This appeal by Anton Roeckl from the superior court's order of summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC) requires us to determine whether a conveyance of real property to a grantee under an assumed business name is barred under Alaska law. We conclude that such a conveyance is permissible in the absence of actual fraud, and, accordingly, we reverse the summary judgment entered below.

## I. STATEMENT OF FACTS

### A. *Judgments against Ferche and Ferche's conveyances to Fermell Company*

On January 14, 1985, Ludwig Ferche executed and delivered a promissory note for $350,000.00 to Alaska Mutual Bank. On June 19, 1985, Ferche modified and increased the note to $1,000,000.00. On March 10, 1986, Ferche executed and delivered to United Bank Alaska a collateral note for $200,000.00. When the notes matured on July 1, 1986, the banks demanded payment, but Ferche defaulted.

At the time, Ferche owned three parcels of undeveloped land in or near Anchorage. On November 6, 1986, Ferche executed warranty deeds conveying two of the parcels to a grantee whom the deeds identified as "Fermell Company, Post. F. 20.05.25, 8000 Munchen 2, West Germany, a foreign business organization." The name "Fermell Company" was not registered under the laws of Alaska or the Federal Republic of Germany.

On April 9, 1987, United Bank Alaska sued Ferche for the amount due on the March 10, 1986 collateral note. On April 27, 1988, while the lawsuit was pending, Ferche conveyed his third parcel of land to Fermell Company. During the course of this litigation, United Bank Alaska and Alaska Mutual Bank merged to form Alliance Bank. On May 20, 1988, Alliance Bank, as successor by merger, obtained judgment against Ferche for approximately $260,295.00 plus interest.

On January 13, 1989, Alliance Bank filed a second lawsuit against Ferche for the amount due on the promissory note of January 14, 1985, and the modification agreement of June 19, 1985. The Director of Banking for Alaska subsequently closed Alliance Bank and appointed FDIC receiver pursuant to AS 06.05.470(d), (z). On August 28, 1991, FDIC, as successor of Alliance Bank, obtained judgment against Ferche on the second suit for $1,100,000.00 plus interest.[1]

### B. *Litigation to set aside Ferche's conveyances to Fermell Company*

In January 1989, Alliance Bank filed an action against Ferche individually and d/b/a Fermell Company, alleging that Fermell Company was a non-existent entity and that Ferche's initial conveyance to Fermell amounted to a sham transfer to avoid the lien created by the May 20, 1988 judgment that had been entered against Ferche as a result of his failure to pay on the collateral note.

Ferche did not answer the complaint, but Fermell Company did. Its answer alleged that Fermell Company was a group of inves-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. FDIC sold the judgments, the promissory notes, and the modification agreement as assets of the failed bank to itself in its separate corporate capacity pursuant to AS 06.05.470(1) and 12 U.S.C. § 1823(c). FDIC has participated in the current litigation in that capacity.

tors headed by Anton Roeckl of Munich, Germany. The answer further claimed that Fermell Company was the bona fide owner of the disputed property and denied that the transfer to it from Ferche had been a fraud or sham.

FDIC, as Alliance Bank's successor, later filed amended complaints seeking to set aside all three of the conveyances that Ferche had made to Fermell Company. The amended complaints reiterated the fraudulent transfer claim against Ferche and asserted that "Fermell Company is not an entity in which title to real property in Alaska may vest." Roeckl, on behalf of Fermell Company, filed an answer denying these allegations and claiming to be the owner of the three parcels of land in his capacity as owner of Fermell Company. Roeckl counterclaimed against FDIC alleging that he had transferred valuable consideration for the title to the property. He further asserted that if the deeds were declared void, he was entitled to an equitable and legal lien against the property for all sums paid to Ferche. In addition, Roeckl cross-claimed against Ferche for damages in the event the deeds were declared void.

FDIC eventually moved for partial summary judgment, requesting the superior court to determine that Fermell Company was not a legal entity capable of receiving title to the disputed properties and to declare Ferche's deeds to Fermell Company void on that basis. Roeckl opposed, arguing that his use of the assumed business name "Fermell Company" to take title of the property had not been improper. Superior Court Judge J. Justin Ripley granted FDIC's partial summary judgment motion, finding that Ferche's warranty deeds to Fermell Company were void, and thus, the title remained vested in Ferche. The court concluded that FDIC's judgment against Ferche "attach[ed] to said real property as a first lien thereon."

Relying on the partial summary judgment order, Judge Ripley later concluded that no trial would be necessary on FDIC's claim that Ferche's conveyances to Fermell Company had been fraudulent. Without reaching the question of fraud, Judge Ripley entered final judgment in favor of FDIC and against Roeckl and Fermell Company.

After unsuccessfully seeking reconsideration by the superior court, Roeckl filed this appeal.

## II. DISCUSSION

### A. *Standard of Review*

▮▮▮▮ In reviewing a grant of summary judgment, this court must independently determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Korman v. Mallin,* 858 P.2d 1145, 1148 (Alaska 1993); Alaska R.Civ.P. 56(c). We must draw all reasonable inferences in favor of the nonmoving party and against the movant. *Korman,* 858 P.2d at 1148.

### B. *Whether the Superior Court Erred in Granting FDIC's Motion for Partial Summary Judgment?*

#### 1. *Arguments on Appeal*

In the present case, Ferche executed three deeds to "Grantee, FERMELL COMPANY, POST F. 20.05.25, 8000 Munchen 2, West Germany, a foreign business organization." FDIC sought to set the transactions aside as fraudulent and also asserted that Fermell Company was a fictitious entity. Anton Roeckl intervened, denying fraud and claiming that Fermell Company was his assumed business name. In moving for partial summary judgment, FDIC maintained that the deeds to Fermell Company were invalid because Fermell Company was a fictitious entity and was not legally capable of holding title.

FDIC's partial summary judgment motion did not raise the underlying contention that the conveyances from Ferche to Fermell Company should be set aside as fraudulent. In granting summary judgment, the superior court did not purport to address the issue of fraud; it simply found the deeds void for lack of a valid grantee. In so doing, the court rejected Roeckl's claim to be the actual grantee as owner of Fermell, concluding that

Fermell was not capable of receiving title because it was a fictitious entity.[2]

On appeal, Roeckl maintains that he was not legally barred from using an assumed business name for the purpose of taking title from Ferche. He argues that the superior court erred in concluding that Fermell was not a legal entity capable of receiving title from Ferche. He asserts that a genuine issue of material fact exists as to "the concurrence of identity between Anton Roeckl and Fermell Company."

In response, FDIC cites the common law rule that a deed must designate a grantee who is legally capable of taking title at the time of the conveyance. FDIC argues that Roeckl should not be permitted to claim title to the parcels under the name Fermell Company because that company is a fictitious entity that did not exist prior to the land transfers. In FDIC's view, the record clearly shows that Fermell Company was a fictitious name rather than a properly assumed business name. FDIC claims that "[t]he undisputed facts in this case show that Anton Roeckl has never been known as, or previously used the name, Fermell Company *prior* to these attempted conveyances." Additionally, noting that Fermell Company was not incorporated or registered as a business in Alaska or Germany, FDIC argues that public policy should bar any person or business from claiming title under an assumed name unless the name has been formally registered.

As framed in the parties' briefs, Roeckl's challenge to the superior court's summary judgment order requires us to consider three related issues: first, whether conveyances to grantees under fictitious or assumed names are generally allowed; second, whether a genuine issue of fact exists as to Roeckl's claim that Fermell Company was an assumed name under which he did business rather than a fictitious entity; and, third, whether Roeckl was barred from taking title under an assumed name that he had not formally registered. We consider each issue in turn.

**2.** The superior court's order did not specify whether the court relied upon FDIC's theory that, as a matter of fact, "Fermell Company" was not Roeckl's assumed business name, or FDIC's

### 2. Are conveyances to grantees under assumed names generally allowed?

■ As correctly noted by FDIC, a deed to a fictitious grantee is void: "Because the underlying transaction requires both a grantor and a grantee and the deed must identify them in some way, a deed to a grantee who is not a living person or an existing entity is void." R.G. Natelson, *Modern Law of Deeds to Real Property*, § 5.1 at 108–09 (footnote omitted); *see also Moffat v. United States*, 112 U.S. 24, 31, 5 S.Ct. 10, 14, 28 L.Ed. 623 (1884) ("[A] patent to a fictitious person is, in legal effect, no more than a declaration that the government thereby conveys the property to no one."); *Oregon v. Bureau of Land Management*, 876 F.2d 1419, 1425 (9th Cir. 1989) ("[T]here is a general rule of property law that a deed made out to a fictitious person is void, while a deed made out to a real person, even if obtained by fraud, is only voidable.").

■ The particular manner in which the deed names the grantee is not critical, however: the grantee need only be "so designated and described as to distinguish him [or her] from the rest of the world." 6 George W. Thompson, *Commentaries on the Modern Law of Real Property* § 3006, at 349 (John S. Grimes repl. ed. 1962). In the event of ambiguity, "[p]arol evidence is admissible to identify the grantee, and a deed is sufficient if the grantee can be identified by extrinsic evidence." *Id.* at 352. In this regard, "all our law requires is that the grantee be described in such terms that by reference to objective evidence otherwise available, his identity may be ascertained with reasonable certainty." *Garroway v. Yonce*, 549 So.2d 1341, 1342 (Miss.1989).

■ Moreover, the law has traditionally distinguished between conveyances to nonexistent or wholly fictitious grantees and conveyances to persons or businesses operating under assumed names:

theory that, as a matter of law, Roeckl did not take the appropriate legal steps to assume the name.

[T]he sometimes stated "general rule" that a deed which names a fictitious person as grantee is void is based on the physical nonexistence of any grantee. However, care must always be taken to distinguish between a deed to a nonexistent being and a deed to a person in existence who is described by an assumed, fictitious, trade, or inaccurate name.

*Thomas v. City of Columbus*, 39 Ohio App.3d 53, 528 N.E.2d 1274, 1276–77 (Ohio App. 1987); *see also Marky Inv., Inc. v. Arnezeder*, 15 Wis.2d 74, 112 N.W.2d 211, 216–17 (1961).

Thus, while recognizing that "[a] conveyance ... to an absolutely fictitious person is a nullity," Tiffany observes that "[i]t does not affect the validity of the conveyance that the name of the grantee ... is not that ordinarily borne by him, but one given to or assumed by him for the occasion is sufficient." 4 Herbert T. Tiffany, *The Law of Real Property* § 967, at 42 (3d ed. 1975) (footnotes omitted).[3]

Because these authorities make it clear that transfers to grantees under assumed names—as opposed to transfers to wholly fictitious or nonexistent entities—are not generally barred, the next question we must face is whether Fermell Company was a fictitious entity or the assumed name of Anton Roeckl.

### 3. Does a genuine factual issue exist as to Roeckl's use of Fermell Company as an assumed business name?

■ FDIC alleged below, and argues here, that Fermell Company was a fictitious entity and, as such, was incapable of receiving title.

Roeckl responds that Fermell was his assumed business name, and he claims that admissible evidence existed to show that he and Fermell Company concurred in identity. Roeckl's argument is well founded. In his answers to interrogatories inquiring about Fermell Company, Roeckl stated:

Fermell Company is the name by which Anton Roeckl does business. It will become an investment group when the property is developed, at which time such group will be controlled by Anton Roeckl. Anton Roeckl is involved in many such investments and developments, but each is independent and stands on its own in all respects. In this instance, the group has not yet been organized, as the property cannot be developed until the market improves. Fermell is not a registered corporation. It is a future partnership into which the current owner, Anton Roeckl, will invite investor/partners when he deems the time to be right to do so.

■ FDIC nevertheless suggests that Fermell Company must be considered a fictitious entity because Roeckl's interrogatory establishes at most that Roeckl assumed the name Fermell Company for the sole purpose of receiving title from Ferche and that the company did not exist before the conveyances were made. However, as is clear from the authorities discussed in the preceding section of this opinion, a grantee who elects to receive title under an assumed name need not select a name that the grantee has previously adopted and used; a name "assumed by [the grantee] for the occasion is sufficient." 4 Tiffany, *supra*, § 967, at 42 (footnotes omitted).[4]

**3.** *Accord* 6 Thompson, *supra*, § 3006, at 354–55 (footnotes omitted):

A deed to a fictitious grantee is a mere nullity, and passes no title. Where there is no such person in existence capable of taking the title, it will remain in the grantor. On the other hand, if the grantee be a person in existence to whom delivery of the deed may be made, the deed is not a nullity, but transfers the title to the person to whom it is delivered. Although an actual person may take title under an assumed name, a deed to a fictitious person is inoperative and the title remains in the grantor. It makes no difference in the legal effect of a deed delivered to the actual purchaser that

he is called by some other name than his own. He may assume a name for the occasion, and a conveyance to and by him under such name will pass the title.

**4.** In its motion for partial summary judgment, FDIC also maintained that Roeckl's description of Fermell Company as a "future business partnership" established that Fermell had not yet been formed as a business and thus was nonexistent when the deeds were executed. Although FDIC does not expressly advance this argument on appeal, we note that Roeckl described himself as the "current owner" of Fermell Company in his interrogatory response pertaining to a "future business partnership." In context, Roeckl's ref-

■ FDIC further suggests that the deeds are void because, on their face, they show that the conveyances from Ferche to Fermell Company lacked adequate consideration. Specifically, FDIC asserts that the deeds indicate that Fermell Company paid only ten dollars for each parcel. FDIC did not raise this argument below. In any event, it is frivolous. The language of the deeds recites that the conveyances were made for ten dollars "*and other good and valuable consideration.*" In his answers to FDIC's interrogatories, Roeckl stated that he paid $25,000 cash to Ferche, $20,000 in back taxes and penalties, and committed to pay Ferche $200,000 when the market would permit profitable development, in consideration for the parcels.

■ The factual concerns that FDIC raises may well be indicators of a fraudulent transaction. As such, however, these concerns would not conclusively establish that Fermell Company was a fictitious entity; they would instead amount to "badges of fraud" raising factual issues ordinarily reserved for trial. *See Blumenstein v. Phillips Ins. Ctr., Inc.,* 490 P.2d 1213, 1223 (Alaska 1971) (holding that "badges of fraud at most are only evidentiary facts tending to prove the ultimate fact, which is that fraud·was intended") (quoting *Matheson v. Patenaude,* 8 Alaska 238, 243 (D.Alaska 1930)); *United States v. Leggett,* 292 F.2d 423, 426–27 (6th Cir.1961) (holding that "[i]nadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of 'badges of fraud' ").

Drawing all reasonable inferences in favor of the nonmoving party and against the movant, *Korman,* 858 P.2d at 1148, we conclude that the record establishes a genuine issue of fact as to whether Fermell Company was an assumed business name that Roeckl relied on at the time of the conveyances.[5] We thus must address the issue of whether Roeckl was authorized to rely on an assumed business name that was not formally sanctioned.

### 4. Was Roeckl legally barred from taking title under an unregistered assumed name?

■ In moving for summary judgment, FDIC alleged without contradiction that Fermell Company was not registered as a business in either Alaska or Germany. FDIC argues that Fermell Company was not a legitimate business entity capable of being named as a grantee because Roeckl never incorporated, registered, or otherwise formally organized the company, either in Alaska or Germany.

FDIC has cited no provision of Alaskan or German law that forbade Roeckl from doing business as Fermell Company without formally registering the name. FDIC's argument in favor of a mandatory registration requirement finds little support as a matter of common law, which "generally recognizes that persons may transact business under an assumed or fictitious name as long as fraud ... [is] not involved." *Platt v. Locke,* 11 Utah 2d 273, 358 P.2d 95, 98 (1961). The proposition appears to be well settled that "[i]n the absence of a statutory prohibition, a person, without abandoning his real name, may adopt or assume a name, and he may use such assumed name to identify himself in the transaction of his business, the execution of contracts and the carrying on of his affairs." *Kreuter v. United States,* 201 F.2d 33, 35 (10th Cir.1953).[6] This rule is settled in practice as well as in law: "There is, of course, nothing illegal whatsoever about

---

erence to a "future business partnership" could reasonably be understood to mean that at the time of the conveyances, Fermell Company was a business that Roeckl operated as a sole owner, but that he envisioned the character of the business would change to a partnership in the future. Because all reasonable inferences must be resolved in favor of the nonmoving party for summary judgment purposes, any ambiguity in Roeckl's interrogatory concerning the viability of Fermell Company at the time of the conveyances must be resolved against FDIC.

**5.** In response to FDIC's motion for summary judgment, Roeckl filed a cross-motion for summary judgment requesting that the court declare the deeds valid. Our conclusion that a genuine issue of fact exists precludes summary judgment in favor of Roeckl.

**6.** *See generally* Annotation, *Doing Business Under an Assumed Name,* 42 A.L.R.2d 516, § 1 (1951).

transacting business under a fictitious name if the purpose is not to defraud. It is a common business practice, particularly on the part of sole proprietorships and partnerships...." *United States v. Dunn,* 564 F.2d 348, 354 n. 12 (9th Cir.1977).

FDIC nevertheless points out that most states have adopted statutes requiring formal registration of assumed business names.[7] Relying on this trend, FDIC urges this court to depart from the common law rule allowing the unformalized use of assumed business names. FDIC argues that a judicially created rule forbidding the use of an unregistered business name is justified as a matter of public policy in the absence of a mandatory registration statute. We find FDIC's argument unpersuasive for several reasons.

The absence of a mandatory registration statute is a two-edged sword, as the legislature's failure to enact such a provision may well indicate its preference to allow the informal use of assumed business names. The Alaska Legislature's failure to enact a mandatory registration requirement appears to be particularly significant in light of the business name statutes that the legislature has in fact enacted. *See* AS 10.35.010–.085. Alaska Statute 10.35.010 provides: "The exclusive right to the use of a business name may be reserved by a person intending to start a business or a person intending to change the name of the person's business." The plain wording of this statute indicates that the legislature intended that registration be permissive rather than mandatory.[8] Of further significance in establishing the permissive character of Alaska's business name statutes is AS 10.35.080, which specifically states that the statutes' provisions allowing registration of business names "[do] not abrogate any rights between persons who have not registered a business name." Thus, the fact that the legislature has affirmatively chosen to permit, rather than require, the registration of assumed business names weighs heavily against accepting FDIC's invitation to fashion a judicially imposed registration requirement.

Moreover, it is far from clear that such a requirement would justify invalidating the conveyances at issue in this case. Although assumed name statutes differ among the various states where they have been adopted, they typically do not specify the effect of a violation on the validity of a contract but rather merely provide for penalties. Courts construing these statutes have generally recognized that registration requirements are in derogation of common law and therefore must be construed narrowly. *See, e.g., Caruso v. Local Union No. 690 of Int'l Brotherhood of Teamsters,* 33 Wash.App. 201, 653 P.2d 638, 642 & n. 2 (1982) (citing cases from other jurisdictions). Consequently, most courts have declined to invalidate contracts entered into in violation of registration re-

---

7. *See, e.g.,* Cal.Bus. & Prof.Code § 17910 (West 1987) ("Every person who regularly transacts business in [California] for profit under a fictitious business name shall: (a) File a fictitious business name statement in accordance with this chapter not later than 40 days from the time he [or she] commences to transact such business."). *See generally* Annotation, 42 A.L.R.2d 516, § 3 (1951).

8. Although we have never had occasion to interpret the statute, the Attorney General construed it to be permissive, in accordance with its plain wording. *See* Attorney General Opinions, File No. 366–357–84 (February 14, 1984). The precise question addressed in the Attorney General's opinion is whether a corporation should be permitted to register an assumed name. The opinion viewed the issue as depending primarily on the question of whether a corporation is a "person" within the contemplation of the reservation of names provision. The opinion concluded that a corporation is a "person" for purposes of the provision. In so concluding, it described Alaska's business name statutes, AS 10.35., in the following terms:

> AS 10.35 is ... a reservation-of-name statute, an effort by the legislature to permit a business to reserve and thereby protect a particular name while at the same time offering those who deal with that business access to information concerning the principals of the business. It does not preclude registration of a fictitious name, nor does any other statute prohibit conducting business under a fictitious name....
> ....
> [The language of the Alaska Business Corporation Act (AS 10.05)] makes it apparent that the legislature intended to permit registration of all businesses except those whose names are already protected by the Corporations Act. Where the business is not incorporated ..., we believe the business should be allowed to register its fictitious name.

quirements, holding that the statutorily specified penalties are the sole consequence of a violation.[9]

The registration requirement that FDIC urges this court to create and apply in this case would thus depart not only from the common law, but also from the majority of cases from other jurisdictions interpreting mandatory registration statutes. We are aware of no decision supporting such a departure. Indeed, FDIC fails to cite any case in which a court, in the absence of an express statutory prohibition, has departed from the traditional rule permitting the non-fraudulent use of an assumed business name for purposes of conveying property. Nor has FDIC alleged or shown any actual prejudice resulting from Roeckl's use of an unregistered business name in the present case.[10]

9. See, e.g., Platt, 358 P.2d at 98 ("It is generally recognized that the legislature in passing such statute did not intend, in addition to subjecting the offender to an express penalty, also to impose the additional penalty of refusing him any relief on the contract."); see also Phillips v. Hoke Constr., Inc., 834 S.W.2d 785, 788 (Mo.App. 1982). See generally Annotation, Doing Business Under an Assumed Name, 42 A.L.R.2d 516, § 5 (1951).

10. FDIC argues that "[a]s a matter of policy, Roeckl should not be permitted to claim title to the properties at issue under the fictitious name of Fermell Company because such a result creates potential for fraud and compromises the integrity of the recording system." However, the recording of the deed properly put FDIC on notice that Ferche transferred his interest to Fermell Company. An investigation leads to Roeckl.

FDIC alternatively asserts that if an individual is able to claim title to property recorded under a fictitious business name, "one could easily hide personal assets in derogation of creditor's rights. For instance, a creditor of Anton Roeckl would not know to search the recording system for the name of Fermell Company in an attempt to discover Mr. Roeckl's personal assets in the form of real property." But this argument proceeds from a wholly implausible premise: that a debtor sufficiently unscrupulous to conceal assets from creditors by hiding property in the names of fictitious grantees would be so scrupulous as to obey the requirements of an assumed name registration statute. While a registration requirement would obviate the need for proof of actual fraud and thereby make it easier to set aside potentially fraudulent conveyances once they were discovered, it seems questionable that such a requirement would facilitate the location of fictitious grantees, who would, in all likelihood, simply go unregistered.

Under the circumstances, we decline to hold that Roeckl's failure to register Fermell Company as a business name would in and of itself preclude Roeckl from using Fermell Company as an assumed name for purposes of taking title from Ferche. As with other suspicious circumstances FDIC has pointed to, Roeckl's use of an unregistered business name that he had apparently never previously assumed may well constitute a badge of fraud indicating that the disputed deeds were executed for the purpose of defrauding Ferche's creditors. As we have already made clear, however, the issue of fraud is one that the trial court was not asked to and did not address in deciding FDIC's motion for partial summary judgment, and it is one that appears to involve genuinely disputed facts.[11]

At any rate, the present case clearly did not involve the potential abuse complained of by FDIC. Roeckl was not the debtor from whom FDIC sought recovery; rather, FDIC's debtor was Ferche, the grantor. FDIC was at all times on notice of the assumed name to whom Ferche conveyed; any potential prejudice lay in the failure to disclose the actual identity of the grantee. As we have already indicated, however, FDIC suffered no apparent prejudice from Ferche's failure to disclose that Fermell Company was Roeckl's assumed name, since Roeckl responded to the complaint that was served on Fermell.

11. FDIC contends that summary judgment might alternatively be justified by reliance on AS 09.25.010(b), a portion of Alaska's statute of frauds that provides, in pertinent part:

If the estate or interest in real property is created, transferred or declared to a nonresident alien or for the benefit of a nonresident alien, the instrument shall so state and shall contain the name and address of the alien.

FDIC asserts that this section prevents nonresident aliens from using fictitious or assumed names unless disclosure is made of their address and their interest in the property being conveyed. Arguably, however, the deeds at issue in this case substantially complied with this requirement by specifying that Fermell Company was a foreign business and setting forth its address. FDIC provides no authority for the proposition that the statute of frauds' nonresident alien section requires that a deed identify the grantee's legal name, rather than an assumed name. Moreover, FDIC advances this argument for the first time on appeal. Various exceptions to AS 09.25.010 are set forth in AS 09.25.020. Because FDIC did not raise this argument below, Roeckl has had no opportunity to establish that the disputed conveyances fall within the statutory exceptions, and the superior court had no occasion to rule on the

## III.  CONCLUSION

The record in this case shows the existence of a genuine issue of material fact as to whether Fermell Company was Anton Roeckl's assumed business name. The record discloses no legal basis for concluding that Roeckl was barred from using Fermell Company as an assumed business name for purposes of receiving property from Ferche. Accordingly, the superior court erred in declaring that the warranty deeds executed by Ferche to Fermell Company were void as a matter of law for lack of a valid grantee, and in granting summary judgment against Roeckl on that ground.[12]

The superior court's order granting partial summary judgment is REVERSED, and the judgment entered on the basis of that order is VACATED. This case is REMANDED for further proceedings consistent with this opinion.

issue.  Under these circumstances, we decline to address this issue.

**12.**  Our conclusion that the superior court erred in granting FDIC's motion for partial summary judgment makes it unnecessary for us to consider

Roeckl's other points on appeal which address the scope of the final judgment that was entered in reliance on the partial summary judgment order.